UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

TAMEAKE MACKLIN, individually and as Assignee of HAPPY CHILD TRANSPORTATION LLC, ALL STAR BUS SERVICE CO., LLC and LEVANDER POLK,

          Plaintiff,

- against -

LEXINGTON INSURANCE COMPANY and SPARTA INSURANCE COMPANY,

          Defendants.

**OPINION AND ORDER**

20 Civ. 05372 (ER)

Ramos, D.J.:

    Tameake Macklin ("Macklin"), individually and as assignee of Happy Child Transportation LLC ("Happy Child"), All Star Bus Service Co., LLC ("All Star"), and Levander Polk ("Polk") brought this action against Lexington Insurance Company ("Lexington") and Sparta Insurance Company ("Sparta," and collectively, "Defendants") on June 3, 2020 in the Supreme Court of the State of New York, County of New York. On July 13, 2020, Defendants removed the case to federal court. Now pending before this Court is Plaintiffs' motion to remand the case back to state court for lack of diversity jurisdiction. For the reasons discussed below, Plaintiffs' motion is DENIED.

## I. BACKGROUND

    Macklin and Polk were both employees of Happy Child, a school bus company. Comp. ¶ 6. Macklin was a bus matron and Polk was a bus driver. *Id.* On May 5, 2014, Macklin was injured when the bus that she was in, which was operated by Polk, collided with a car being driven by Jasmine Williams, in Brooklyn, New York. *Id.* On January 8, 2015, Macklin brought

a personal injury action against Altfest Auto Leasing Inc. ("Altfest"), Happy Child, All Star, Polk, and Jasmine Williams, in the Supreme Court of the State of New York, Kings County. [1] *Id.* On October 4, 2019, the jury rendered a liability verdict in Macklin's favor, apportioning 85 percent fault to Altfest, Happy Child, All Star and Polk and 15 percent to Jasmine Williams. [2] *Id.* Following the liability trial, the court conducted a bench trial to calculate the damages to which Macklin was entitled and entered a judgment in the amount of $6,031,745. *Id.* Following the verdict, Progressive Insurance Company paid $1,000,000, the limit of its coverage, on behalf of the Altfest, Happy Child, All Star and Polk. *Id.*

On December 11, 2019, Happy Child, All Star, and Polk assigned to Macklin "all their rights, title and interest in and to any and all claims . . . they might have against any insurance company[.]" Compl. ¶ 7. Lexington, which is a member of the AIG Group of Insurance Companies and owned by AIG Property Casualty U.S. Inc. ("AIG"), issued a commercial umbrella liability policy to Happy Child that was effective from June 25, 2013 to June 25, 2014. *Id.* at 5. Sparta, which is owned by Catalina Holdings and Catalina U.S. Insurance Services LLC, issued a package insurance policy to Happy Child. *Id.* The Sparta policy included business auto liability coverage in the amount of $1 million for the period of January 1, 2014 to January 15, 2015. *Id.*

On June 3, 2020, Macklin brought this action against Lexington and Sparta in the Supreme Court of the State of New York, County of New York, alleging a failure to satisfy the remainder of the judgment against Lexington and Sparta's insureds Happy Child, All Star, and Polk. *Id.* at 14–17.

---

[1] Altfest and All-Star are auto-leasing services hired by Happy Child.

[2] Jasmine Williams subsequently settled with Macklin. Compl. ¶6.

On July 13, 2020, Defendants removed the case to this Court on the basis of diversity jurisdiction. Defendants alleged that Sparta was incorporated and has a principal place of business in Connecticut, that Lexington was incorporated in Delaware and has a principal place of business in Massachusetts, and that Macklin is a citizen of New York. Notice of Removal, Doc. 2. On August 12, 2020, Macklin filed a motion to remand the case back to state court alleging that Lexington's principal place of business is actually in New York, and not in Massachusetts, undermining complete diversity. Mem. in Supp. of Plain. Mot. To Remand, Doc. 16 at 2. Macklin also argues that Lexington should be judicially estopped from denying that its principal place of business is New York because it has affirmatively alleged that New York is its principal place of business in numerous lawsuits it has filed. *Id.* On September 3, 2020, Lexington opposed. Doc. 18–20.

## II.   LEGAL STANDARDS

The federal removal statute provides that "any civil action brought in a state court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a). The Second Circuit has established that "in light of the congressional intent to restrict federal court jurisdiction, as well as the importance of preserving the independence of state governments, federal courts construe the removal statute narrowly, resolving any doubts against removability." *Purdue Pharma L.P. v. Kentucky*, 704 F.3d 208, 213 (2d Cir. 2013) (quoting *Lupo v. Human Affairs Int'l, Inc.*, 28 F.3d 269, 274 (2d Cir. 1994)). The party seeking removal bears the burden of proving that the jurisdictional and procedural requirements of removal have been met. *Mehlenbacher v. Akzo Novel Salt, Inc.*, 216 F.3d 291, 296 (2d Cir. 2000). However, "[i]f at any

3

time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c).  "When considering a motion to remand, the district court accepts as true all relevant allegations contained in the complaint and construes all factual ambiguities in favor of the plaintiff." *Weiss v. Hager*, No. 11 Civ. 2740 (VB), 2011 WL 6425542, at *2 (S.D.N.Y. Dec. 19, 2011).  Moreover, "[b]ecause this is a jurisdictional inquiry," the Court may "look beyond the face of the complaint" to affidavits and exhibits when deciding whether to remand.  *Gov't Emps. Ins. Co. v. Saco*, No. 15 Civ. 634 (NGG) (MDG), 2015 WL 4656512, at *3 (E.D.N.Y. Aug. 5, 2015).

III.   **DISCUSSION**

   a. **Motion to Remand**

"Where removal is based on diversity jurisdiction, there must be complete diversity of citizenship between the plaintiff(s) and the defendant(s)." *Sons of the Revolution in N.Y., Inc. v. Travelers Indem. Co. of Am.*, No. 14 Civ. 03303 (LGS), 2014 WL 7004033, at *2 (S.D.N.Y. Dec. 11, 2014).  The party seeking to invoke diversity jurisdiction bears the burden of demonstrating that diversity is complete. *McNutt v. Gen. Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936).  "When challenged on allegations of jurisdictional facts, the parties must support their allegations by competent proof." *Hertz Corp. v. Friend*, 559 U.S. 77, 96–97 (2010) (citing *McNutt*, 298 U.S. at 189).  'Competent proof' means proof of a reasonable probability that diversity jurisdiction is satisfied. *LaSala v. E*Trade Secs. LLC,* No. 05 Civ. 5869 (SAS), 2005 WL 2848853, at *3 (S.D.N.Y. 2005); *South Park Associates, LLC v. Renzulli,* 242 F.3d 368 (2d Cir. 2000) (stating that facts must be supported with competent proof and allegations must be justified by a preponderance of evidence); *North American Thought Combine, Inc. v. Kelly*, 249

4

F. Supp. 2d 283 (S.D.N.Y. 2003) (stating that the party asserting jurisdiction must support its fact with competent proof).

A corporation will be deemed a citizen of the state in which it is incorporated and where it maintains its "principal place of business." *Wachovia v. Schmidt*, 546 U.S. 303, 318 (2006); 28 U.S.C. § 1332(c)(1).  The Supreme Court has determined that the "nerve center" test must be employed to determine a corporation's principal place of business.  *Hertz Corp.*, 559 U.S. at 80–81.  The principal place of business analysis considers the location where "officers direct, control, and coordinate the corporation's activities" and generally will "be the place where the corporation maintains its headquarters, provided that the headquarters is the actual center of direction, control, and coordination . . . and not simply an office where the corporation holds its board meetings (for example, attended by directors and officers who have traveled there for the occasion)."  *Id.* at 92–93.  The *Hertz* Court concluded that the nerve center points in "a single direction;" therefore, a corporation may only have one principal place of business.  *Id.* at 93.

Lexington claims to be a citizen of Delaware, where it is incorporated, and Massachusetts, where it has a principal place of business.  Notice of Removal, Doc. 2.  Macklin argues that Lexington's principal place of business is actually New York based, inter alia, on its representations in several lawsuits previously filed in New York state court.  Doc. 16–10.  Plaintiff further argues that Lexington should be judicially estopped from arguing its principal place of business is Massachusetts.  *Id.*

Macklin has submitted 21 complaints, filed by Lexington, in the New York State Supreme Court, in which Lexington is the plaintiff.  Doc 16–1.  In 5 of the 21 complaints, Lexington affirmatively alleges Lexington's principal place of business as New York in stating "the basis of the venue includes the location Plaintiff's principal place of business at 175 Water

5

Street."  Doc 16–6; Response to Sur-Reply, Doc. 27.  *See Lexington Ins. Co. v. Ryder Truck Rental*, Index No. 152378/2016; *Lexington Ins. Co. v. Werner Enterprises Inc.*, Index No. 150041/2016; *Lexington Ins. Co. v. Valley Forge Home Inspections, Inc.*, Index No. 150090/2014; *Lexington Ins. Co. v. Watts*, File No. X37-12182-Y; *Lexington Ins. Co. v. Wong*, File No. 02-091618.  In the other 16 complaints, the summons states, "Venue is based upon the residence of the Plaintiff at 175 Water Street, New York, NY 10038."  Doc. 16; Doc. 27.  Macklin further alleges Lexington's principal place of business to be New York based on the fact that seven of the ten senior-most executives reside in New York or maintain New York phone numbers.  Doc. 27 at 2; Doc. 19 at 8.  Finally, Macklin submits a Report of Examination of Lexington, [3] issued by the Delaware Department of Insurance Commissioner which indicates that Lexington's "statutory home office" is in New York.  Doc. 16–6.  Macklin has adequately raised a question regarding the true location of Lexington's principal place of business.  Doc. 16–6; *McNutt*, 298 U.S. 189 (holding that an adversary may appropriately challenge the jurisdictional facts alleged); *see e.g., Vida Longevity Fund, L.P. v. Lincoln Life & Annuity Co.*, 19 Civ. 6004 (ALC) (DF), 2020 WL 4194729 (S.D.N.Y. July 21, 2020) (holding that filings by an insurance commissioner serve to raise doubt as to a defendant's principal place of business).

In response, Lexington asserts that the principal place of business alleged in the complaints cited by Macklin were mistaken.  Doc. 19–1 at 6.  In sur-reply, Lexington attaches affirmations from attorneys [4] Matthew D. Kennedy and William N. Devito, who filed 6 of the 21

---

[3] This Report details the results of an examination performed by the Delaware Department of Insurance, as required by the National Association of Insurance Commissioners ("NAIC") *Financial Condition Examiners Handbook* ("Handbook") and pursuant to Certificate of Authority No. 16.001.  Doc 16–6.  The Handbook "requires that [the Department of Insurance] plan and perform the examination to evaluate the financial condition, assess corporate governance, identify current and prospective risks of [Lexington] and evaluate system controls and procedures used to mitigate those risks."  *Id.*

[4] Macklin argues that this Court should not consider the affirmations provided by Lexington in sur-reply because Lexington's sur-reply was improper.  Doc. 27 at 2–3.  The Court may consider affirmations submitted when

6

complaints, averring that they were mistaken in identifying New York as Lexington's principal place of business. Doc. 23–2; Doc. 23–3. Lexington also submits a Declaration of Jihan Garces, a Legal Entity Management Analyst in the Office of Corporate Governance and Transactions at AIG, parent company of Lexington [5] ("Declaration") and a Secretary Certificate [6] ("Certificate") showing that Lexington maintains its principal place of business in Massachusetts. *Declaration of J. Garces,* Doc. 19–2; *Exhibit A, Secretary Certificate*, Doc. 19–2B.

Despite the challenge raised by Macklin, the Court finds that the evidence provided by Lexington serves as comptent proof that Lexington's true principal place of business is Massachusetts and thus, this Court may exercise diversity jurisdiction. *Hertz*, 559 U.S. 96–7; *see e.g., Eisenberg v. New England Motor Freight, Inc.,* 564 F. Supp. 2d 224, 229 (S.D.N.Y. 2008) (holding that a corporate representative's declaration as to the principal place of business is enough to meet the competent proof standard); *Govias v. Tejada,* No. 10 Civ. 3397 (JSR), 2010 WL 3528867, at •2 (S.D.N.Y. Aug. 20, 2010) (holding that a company's partnership agreement, stating the principal place of business, can serve as competent proof of the partnership's principal place of business); *Bleakley v. Birdcage Shopping Center*, No. 2:10 Civ. 332 (WBS), 2010 WL 11700698, at *2 (E.D. Cal. Apr. 13, 2010) (holding that the Secretary of State's listed "Entity Address" serves as competent proof of defendant's principal place of business). [7]

---

determining jurisdictional matters. *Bobcar Media, LLC v. Aardvark Event Logistics, Inc.*, 354 F. Supp 3d 375, 380 (S.D.N.Y. 2018) (holding that the court may consider affidavits, exhibits, and declarations when considering a lack of subject matter jurisdiction).

[5] Jihan Garces submits that as a Legal Entity Management Analyst for AIG, he is familiar with the location of incorporation and principal place of business of Lexington. Doc. 19-2.

[6] The Secretary Certificate, signed by Tanya Kent, the elected Secretary of Lexington, certifies that the principal place of business of Lexington is 99 High Street, 23rd Floor, Boston, Massachusetts 02110. Doc. 19-2.

[7] Macklin attempts to analogize to *Vida Longevity Fund, L.P. v. Lincoln Life & Annuity Co.*, No. 19 Civ. 6004 (ALC) (DF), 2020 WL 4194729 (S.D.N.Y. July 21, 2020). The *Vida* plaintiff challenged the defendant's principal place of business by pointing to an NAIC Examination Report, which identified defendant's "statutory home office" as being New York and an admission by defendant that its principal place of business was in New York. *Vida*, 2020

Further, the holding in *Sullivan v. Duncan* is persuasive on the present case. No. 13 Civ. 1640 (SAS), 2015 WL 4393316, at *4–5 (S.D.N.Y. July 17, 2015). In *Sullivan*, the defendant moved to dismiss all claims against it on the basis of the lack of diversity jurisdiction. *Id.* In arguing that diversity of all parties did not exist, the defendant filed a certificate by the defendant's Senior Vice President, Deputy General Counsel and Secretary identifying its principal place of business as New York. *Id.* The court granted dismissal of the claims stating that, in the face of such competent proof presented by defendant, plaintiff had to affirmatively show that the certificate contained false information and that defendant's principal place of business was some state other than New York. *Id.* The *Sullivan* plaintiff failed to show that the certificate contained false information. *Id.* As in *Sullivan*, Lexington has provided the Court with a Certificate showing its principal place of business is in Massachusetts. Doc. 19–2B; *Id.*

### b. Doctrine of Judicial Estoppel

Macklin argues that, in any event, Lexington should be estopped from denying its principal place of business is New York because it has previously asserted as much in numerous complaints filed here. As an initial matter, "principles of estoppel do not apply" to questions of subject matter jurisdiction. *Insurance Corp. of Ireland v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702 (1982). *See also Wight v. Bank of America Corp.*, 219 F.3d 79, 90 (2d Cir. 2000) ("[I]rrespective of how the parties conduct their case, the courts have an independent obligation to ensure that federal jurisdiction is not extended beyond its proper limits."); *Creaciones Con Idea. S.A. de C.V. v. Mashreqbank PSC*, 232 F.3d 79, 82 (2d Cir. 2000) ("At the outset, we note that principles of estoppel do not apply to questions of subject matter

---

WL 4194729, at *10. The Court denied the defendant's request to transfer the case because of the uncertainty surrounding defendant's principal place of business. *Id.* However, *Vida* addresses a transfer of venue, rather than a motion to remand, and did not involve a Certificate. *Id.*

8

jurisdiction."); *Signature Fin. LLC v. Chicago Elite Cab Corp.*, No. 16 Civ. 6063 (DRH) (SIL), 2018 WL 1385896, at *4 (E.D.N.Y. Mar. 19, 2018) ("The Second Circuit has already established that 'principles of estoppel do not apply' to questions of subject matter jurisdiction.'").

Moreover, even if the Court were to apply the doctrine, Macklin's motion would still be denied. "Under the judicial estoppel doctrine, where a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the positions formally taken by him." *New Hampshire v. Maine,* 532 U.S. 742, 742 (2001) (citing *Davis v. Wakelee*, 156 U.S. 680, 689 (1895)). The purpose of the doctrine "is to protect the integrity of the judicial process by prohibiting parties from deliberately changing positions according to the exigences of the moment." *New Hampshire*, 532 U.S. at 749–50. In evaluating whether the doctrine applies, courts consider the following factors: "(1) that a party's new position is 'clearly inconsistent' with its earlier position, (2) that the party seeking to assert this position previously persuaded a court to accept its earlier position, and (3) that the party 'would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped.'" *Intellivision v. Microsoft Corp.*, 484 F. App'x 616, 619 (2d Cir. 2012) (citing *New Hampshire*, 532 U.S. at 750–51). The Supreme Court has made clear that these factors are not an exhaustive formula for determining the applicability of the doctrine of judicial estoppel, and that "[a]dditional considerations may inform the doctrine's application in specific factual contexts." *New Hampshire*, 532 U.S. at 751; *see also Intellivision*, 484 F. App'x at 2 (noting that the Supreme Court has made clear these factors do not constitute 'inflexible prerequisites); *DeRosa v. Nat'l Envelope Corp.*, 595 F.3d 99,103 (2d Cir. 2010) (heeding that "[t]ypically, judicial estoppel will apply if" these factors are present); *Young v. U.S. Dep't of*

9

*Justice*, 882 F.2d 633, 639 (2d Cir. 1989) ("The circumstances under which the doctrine could be applied are far from clear.").

The standard set forth in *New Hampshire* is not be met in this case. 532 U.S. at 751 (stating that several factors will inform the decision to invoke judicial estoppel); *see also Intellivision,* 484 F. App'x. at 2 (stating that typically judicial estoppel will only apply if all three factors are present); *Montrose Medical Group Part. Savings Plan v. Bulger*, 243 F.3d 773, 779 (3rd Cir. 2001) ("Three requirements must be met before a district court may properly apply judicial estoppel."). Though Macklin has shown that Lexington has advanced "clearly inconsistent" positions regarding its principal place of business, Lexington has provided convincing evidence that its prior representations were mistaken. *New Hampshire*, 532 U.S. at 751; Doc. 16–1. Even if Macklin were correct that Lexington benefitted from its representations that New York was its principal place of business, Doc. 21-5 at 9, judicial estoppel does not apply to inadvertent mistakes as judicial estoppel requires that the estopped party acted intentionally. *See e.g. Sea Trade Co. Ltd. v. FleetBoston Financial Corp.*, No. 03 Civ. 10254 (JFK), WL 4129620, at *5 (S.D.N.Y. Sept. 4, 2008) ("[T]he doctrine does not apply if the initial statement was the result of a good faith mistake or unintentional error.").

Therefore, Lexington is not judicially estopped from asserting its principal place of business is Massachusetts.

## III.   CONCLUSION

For the forgoing reasons, Macklin's motion to remand is DENIED.  The parties are directed to appear for a telephonic conference on October 16, 2020 at 11:30 am.  The parties are directed to call (877) 411-9748, Access Code 3029857#.  The Clerk of the Court is respectfully directed to terminate the motion, Doc. 16.

It is SO ORDERED.

Dated:   September 29, 2020
         New York, New York

_____
Edgardo Ramos, U.S.D.J.