UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

TAMEAKE MACKLIN, Individually and as
assignee of HAPPY CHILD
TRANSPORTATION LLC, ALL STAR BUS
SERVICE CO., LLC, and LEVANDER
POLK,

                              Plaintiffs,

                - against -

SPARTA INSURANCE COMPANY,

                              Defendant.

**OPINION & ORDER**

20 Civ. 5372 (ER)

RAMOS, D.J.:

        Tameaka Macklin brings this action against Sparta Insurance Company ("Sparta") to

collect on the remainder of a $6 million judgment for injuries she sustained in a school bus

accident.  Pending before the Court are Macklin's motions to strike certain of Sparta's denials

and affirmative defenses, and to quash third-party subpoenas issued by Sparta.  For the reasons

set forth below, Macklin's motions are DENIED.

I.      **BACKGROUND**[1]

        a.  **Sparta and the Accident**

        Sparta, a liability insurance company that operates in New York, issued a package

insurance policy (the "Policy") to Happy Child Bus Service Co. LLC ("Happy Child") for the

period January 1, 2014 to January 15, 2015 (the "Policy").  ¶¶ 21–23.  The Policy included a

business auto coverage form (the "Business Auto Part"), providing $1,000,000 in coverage; a

---

[1] Unless otherwise noted, citations to "¶ __" refer to the First Amended Complaint ("FAC"), Doc. 54.

commercial general liability coverage form (the "CGL Part"), providing $1,000,000 in coverage; and personal injury protection benefits (the "PIP Benefits"), providing up to $50,000 in coverage.  ¶¶ 24–26.  The portion of the Policy concerning "Duties In The Event Of Accident, Claim, Suit Or Loss" provides:

> We have no duty to provide coverage under this policy if the failure to comply with the following duties is prejudicial to us:  In the event of accident, claim, suit or loss, you or someone on your behalf must give us or our authorized representative notice as soon as reasonably possible of the accident or loss.  Include:  (1) [h]ow, when and where the accident or loss occurred; [t]he insured's name and address; and (3) [t]o the extent possible, the names and addresses of any injured persons and witnesses.  Written notice by or on behalf of the injured person or any other claimant to our authorized representative shall be deemed notice to us.  Additionally, you and any other involved insured must . . . [s]end us copies of any request, demand, order, notice, summons or legal paper received concerning the claim or suit as soon as reasonably possible.

Doc. 81-44 at 9–10 (internal quotation marks omitted).

On May 5, 2014, Macklin sustained injuries while riding as a bus attendant in a school bus (the "School Bus") operated by Happy Child—and driven by Levander Polk, an employee of Happy Child—that collided with another vehicle driven by Jasmine T. Williams.[2]  ¶¶ 28–29.  Macklin alleges that Happy Child leased the School Bus from Altfest Auto Leasing Inc. ("Altfest") pursuant to a lease agreement (the "Lease Agreement"), Doc 54-18, and that Altfest owned the School Bus but that it was registered to Happy Child.[3]  ¶¶ 112–14.  All Star Bus Service Co., LLC ("All Star"), who Sparta claims is Happy Child's sister company, *see* Doc. 109 ¶ 6, provided transportation services to Happy Child, pursuant to a sub-contract.  *See* Doc. 54-17.

---

[2] Macklin also sued Williams but has already settled with her.  ¶ 41.

[3] Sparta contends that Macklin has not established that Altfest leased the School Bus to Happy Child.  Doc. 61 ¶¶ 70–71.  Sparta asserts that on December 27, 2013, it emailed Happy Child's broker, Capacity Group of NY LLC ("Capacity"), to confirm that another vehicle (*not* the School Bus) was the *only* vehicle that Happy Child was leasing from Altfest.  *See* Doc. 109-5 at 9.  In response, Capacity advised that the other vehicle was indeed the *only* one that Happy Child was leasing from Altfest.  *Id.*  Sparta therefore claims that it had reason to believe that Happy Child was not leasing the School Bus from Altfest.  *See* Doc. 108 at 25–26.

Under the sub-contract, All Star was responsible for operating the buses that brought students and school attendants to and from school.  Doc. 54-17 at 2.

The following month, on June 3, 2014, Macklin's counsel, Koenigsberg & Associates P.C. ("Koenisberg"), sent a demand to Sparta's "Bodily Injury Claims Department," requesting coverage for, *inter alia*, personal injuries she sustained as a result of the May 5, 2014 accident (the "Bodily Injury Letter"); the letter attached a corresponding police report.  *See* Doc. 54-3. Also on June 3, 2014, Koenisberg sent a separate letter to Sparta's "No Fault Claims Department," requesting coverage for personal injuries under the Policy (the "No Fault Letter," together with the Bodily Injury Letter, the "June 2014 Letters").  *See* Doc. 54-2.  The June 2014 Letters were received by Sparta.  ¶ 49.[4]  The following week, on June 10, 2014, Gallagher Bassett-Capital City ("Gallagher"), a third-party administrator for Sparta, acknowledged receipt of Macklin's claim.[5]  ¶ 51.

According to Sparta, the following week, in a June 17, 2014 telephone call, Happy Child's insurance broker, Capacity, told Gallagher that the School Bus was insured by Progressive Insurance Company ("Progressive") and was not covered under the Policy.[6]  *See* Doc. 110 at 13.

---

[4] While Sparta concedes that the letters were received and signed for, its case file shows no record of the Bodily Injury Letter.  *See* Doc. 108 at 15.

[5] Sparta admits that Gallagher acted as its third-party administrator and, as such, had limited agency.  Sparta argues, however, that Gallagher did not have the authority to act as Sparta's agent for all purposes and asserts that the FAC overstates Gallagher's authority.  *See* Doc. 81-41 at 2.

[6] National Continental Insurance Company ("National Continental") is a subsidiary of Progressive Insurance Company ("Progressive") and issued an insurance policy that provided coverage to All Star, Altfest, Happy Child, and Polk in connection to the Underlying Action.  ¶ 28.

One month later, on July 9, 2014, Macklin's counsel called Gallagher to follow up on one, or both, of the June 2014 Letters.[7]   ¶ 54.  As reflected in Sparta's records, an employee of Gallagher stated that Macklin's claim was reported to Gallagher in error and that the insurer of the claim was Progressive Insurance.[8]   *See* Doc. 54-6 at 23.

Another month later, on August 7, 2014, Gallagher sent Macklin a "New York Motor Vehicle No-Fault Insurance Law Denial of Claim Form," *see* Doc. 54-7, which denied Macklin coverage for "Loss of Earnings," "Health Service Benefits," or "Other Necessary Expenses," on the basis that:

> "The vehicle involved in this accident, is not a covered vehicle under the policy noted above.  As such, there is no personal injury protection coverage afforded for this claim.  The vehicle is not listed on [the Policy].  In addition, the Claimant is not a policyholder, is not a named insured or an eligible injured person under our insured's policy.  Claim is denied, the Claimant was not an occupant of the insured vehicle."

*Id.* at 2.[9]   Although Macklin has taken the position in this action that the denial was improper, she has not made a claim for no fault benefits in this litigation.  *See* Doc. 109 ¶ 8.

**b.  The Underlying Action**

Four months later, on December 24, 2014, Macklin filed an action, *Macklin v. All Star, Altfest, Happy Child, and Polk.*, Index No. 241/2015 (the "Underlying Action"), in the New York Supreme Court for the County of Kings.  ¶¶ 28, 30.  There, Macklin sued All Star, Altfest, Happy Child, and Polk (the "Underlying Defendants"), for injuries she sustained in the May 5,

---

[7] Macklin alleges that the call was made in reference to its bodily injury claim; but Sparta argues that the evidence shows that the call could have been made, instead, with respect to the No Fault claim that, according to Sparta, Gallagher was actually handling.  *See* Doc. 108 at 15–16.

[8] The following year, on September 8, 2015, Macklin's counsel called Sparta for the second time to follow up on her claim.  ¶ 58.  Again, the parties dispute whether Macklin's counsel called in reference to the bodily injury claim or the no fault claim.  *See* Doc. 108 at 15–16.  Gallagher again purportedly responded that the claim was reported in error and that National Continental provided coverage for the claim.  ¶ 59; *see also* Doc. 54-6 at 24.

[9] Sparta admits that it never denied coverage for Macklin's bodily injury claim under the CGL Part of the Policy. *See* ¶ 65; Doc. 61 ¶ 65.

2014 accident (the "Underlying Accident"). The Donohue Law Firm ("Donohue") represented the Underlying Defendants, and Koenisberg represented Macklin. *See* Doc. 84 ¶¶ 5, 33. The Law Offices of Sher, Herman, Bellone & Tipograph ("Sher Herman") separately represented Macklin on questions related to worker's compensation. *Id.*

Three years into the Underlying Action, on April 13, 2018, the court issued an order precluding the Underlying Defendants from testifying or offering any affidavits at trial to support their defenses (the "Preclusion Order") because the Underlying Defendants had previously failed to produce discovery. *See* Doc. 107 ¶ 12; Doc. 107-10. As a consequence of the Preclusion Order, the court later declined to consider an affidavit from Joseph Marzo, Jr., a member of All Star, supporting arguments on summary judgment that: (1) Macklin's claim was barred by New York Worker's Compensation Law because she was an employee of Happy Child, and (2) Altfest, a leasing company, should be dismissed pursuant to the Graves Amendment.[10] *See* Doc. 107 ¶ 12; *see* Doc. 107-11 at 6–7. The court denied the Underlying Defendants' motion for summary judgment. *See* Doc. 107 ¶ 12.

The following year, on September 18, 2019, Macklin sent AIG Insurance Company—the parent company of Lexington Insurance Company ("Lexington"), another insurer of Happy Child[11]—a settlement letter (the "Settlement Letter"), as trial was about to commence in the

---

[10] Among other provisions, 49 U.S.C. § 30106, also known as the Graves Amendment, provides, in general, that "an owner of a motor vehicle that rents or leases the vehicle to a person (or an affiliate of the owner) shall not be liable under the law of any State or political subdivision thereof, by reason of being the owner of the vehicle (or an affiliate of the owner), for harm to persons or property that results or arises out of the use, operation, or possession of the vehicle during the period of the rental or lease, if" "the owner (or an affiliate of the owner) is engaged in the trade or business of renting or leasing motor vehicles; and" there is no negligence or criminal wrongdoing on the part of the owner (or an affiliate of the owner)."

[11] Macklin initially named Lexington as a defendant in the instant action as another insurer of Happy Child. *See* Doc. 1-1. Macklin settled its claim against Lexington during mediation, and the Court dismissed the claim with prejudice on November 12, 2021. *See* Doc. 67.

Underlying Action, copying the Underlying Defendants' counsel, Donohue.  Doc. 54-8; ¶ 10.

The Settlement Letter provided:

> As you know, this matter was scheduled for Final Jury Selection today and Jury
> Selection has commenced. . . .  This is to advise that my client is willing to settle
> this matter with your insureds' policy limits at the present time . . . for a total of
> $5,000,000.00. . . .  I am authorized to extend this offer for a short time only and
> the offer will expire at 5 P.M. on Friday September 20, 2019 after which time I
> am instructed to pursue this matter to verdict.

Doc. 54-8 at 2.  Two days later, on September 20, 2019 (the same day Macklin's offer was set to

expire), Happy Child's broker, Capacity, verbally informed Sparta of the Settlement Letter.  *See*

Doc. 110 at 13; *See* Doc. 109 ¶ 12.  At that point, the trial was scheduled to begin the following

week.  Doc. 110 at 13.  After the settlement negotiations failed, Capacity forwarded a copy of the

complaint in the Underlying Action to Gallagher on September 26, 2019, the day before trial.  *Id.*

This was the first time Sparta received a copy of the complaint.  *See id.*

Having learned of the Underlying Action and the Settlement Letter, Sparta sent a

disclaimer letter to Happy Child on September 27, 2019, indicating "that there is no coverage

available under the [Sparta] Policy for the [Underlying Action]" for five reasons:

> [(1)] At this time, it is unclear whether the School Bus is covered [as a]
> Specifically Described "Auto[]," as we are not in possession of the School Bus'[s]
> VIN number[;  (2)] Macklin's allegations and the police report indicate that the
> School Bus was owned by Happy Child.  Thus the School Bus is not covered
> under Symbol 8 Hired "Autos" Only, and is likewise not covered under Symbol 9
> Nonowned "Autos" Only[;  (3)] even if the [Underlying Action] concerned a
> covered "auto," coverage for Happy Child would be precluded [under the]
> "Employee Indemnification And Employer's Liability" [exclusion, or the]
> "Fellow Employee" [exclusion, because] the notice of claim states that Macklin
> was an employee of Happy Child on the date of the accident, and, thus, there is no
> coverage for her injuries[;  (4)] Macklin's allegations and the notice of claim also
> confirmed that Polk, the School Bus driver, was also an employee of Happy Child
> on the date of the accident, [and although] coverage for Polk has not been sought .
> . . the [] Policy excludes coverage for "bodily injury" to an insured's fellow
> employees.  Here Macklin was Polk's . . . fellow employee[; and (5)] Happy
> Child has failed to comply with the notice provisions of the [Policy, specifically
> the] "Duties In The Event Of Accident, Claim, Suit, Or Loss' [subsection, by

> having only notified [Sparta] on September 20, 2019, just hours before Macklin's final offer to settle was set to expire.  Macklin thereby] unreasonably and inexcusably prevented [Sparta] from exercising its rights to investigate this matter.

*See* Doc. 54-9, the "Disclaimer Letter," at 3–7.  By letter dated September 28, 2019, Macklin advised Sparta that it had notice of her claim as early as June 10, 2014 but that Sparta refused to participate in the Underlying Action.  ¶ 69.  A few weeks later, on October 11, 2019, Sparta sent Macklin another letter, noting that

> although Macklin's counsel sought no-fault and uninsured/underinsured motorist benefits under the [] Policy by way of a June 3, 2014 letter, that request for first-party coverage (which was acknowledged on June 10, 2014 and denied on August 7, 2014) made no mention of Macklin's intention of subsequently bringing a lawsuit against her employer, Happy Child.  In fact, Macklin's counsel never challenged the denial or provided [Sparta] with separate notice of the filing of the *Macklin Action*.

> The September 20, 2019 initial notice confirmed that both Macklin and Polk . . . were employees of Happy Child on the date of the alleged accident.  More recently, [Sparta] has independently obtained a copy of the Workers' Compensation Board decision and award dated December 30, 2014, which also confirms that Macklin was employed by Happy Child.  Tellingly, Macklin's counsel admitted in his May 7, 2019 opposition to the defendants' motion for summary judgment in the [Underlying] Action (which was based upon the Workers' Compensation bar) that Macklin 'was employed as a bus attendant for Happy Child" at the time of the alleged accident.  Although the Court denied the motion for summary judgment . . . , the Court indicated that "plaintiff testified at her deposition that she worked for Happy Child [and] plaintiff's counsel states that plaintiff was employed by Happy Child at the time of the accident.'  Nevertheless, the Court denied the motion based upon a procedural finding of lack of sufficient evidence.  After the court deemed that the affidavit submitted in support of the motion was inadmissible because of the order issued on April 13, 2018, precluding all of the defendants . . . from testifying or offering affidavits in the [Underlying] Action.  We understand that the denial of the motion for summary judgment was never appealed by Happy Child.  Although the Workers' Compensation bar defense was apparently renewed at trial, it was once again denied on similar grounds.  However, it remans that Macklin was, in fact, employed by Happy Child at the time of the alleged accident.

Doc. 54-16 at 3.  Ultimately, Sparta did not participate in the Underlying Action or in settlement negotiations.  ¶¶ 38–39.

At the close of trial on October 4, 2019, a jury determined that the Underlying Defendants were 85% at fault.[12]  ¶ 37; *see* Doc. 81-20 at 2.  The court thereafter conducted a non-jury trial and found that Macklin was entitled to the following damages against the Underlying Defendants:  $2,000,000 for past pain and suffering; $4,000,000 for future pain and suffering; $290,000 for future lost wages; and $1,000,000 for future medical expenses—a total award of $7,290,000.  ¶ 43.

However, before the court's verdict was rendered, the parties entered into a "high-low" agreement that provided that Macklin would not receive less than $ 1 million but not more than $ 6 million, irrespective of the verdict.  ¶ 44.  Accordingly, on October 22, 2019, the court reduced its award to $6,000,000 and entered a judgment in the amount of $6,031,475.00 against All Star, Altfest, Happy Child, and Polk.  ¶ 45.  Approximately two months later, on December 11, 2019, All Star and Happy Child assigned to Macklin:

> "all their rights, title and interest in and to any and all claims including those for bad faith, contractual indemnification, wrongful disclaimer, contractual contribution, common law contribution, and any other claims they might have against any insurance company and/or any other person or persons, arising out of the manner in which that entity has provided insurance coverage, underlying insurance, excess insurance coverage, stacking insurance, concurrent insurance and/or for defense and/or indemnification"

Doc. 54-24 at 2–3.  Polk, while referenced in the assignment (the "Assignment" as an employee of Happy Child, did not sign the document.  *Id.* at 3.  Altfest was not party to the Assignment.

The following month, on January 17, 2020, a representative of Macklin contacted Sparta, informing it of the judgment against the Underlying Defendants and requesting payment of the outstanding balance.  ¶ 122.  Two weeks later, on January 31, 2020, Sparta replied, restating that

---

[12] None of the Underlying Defendants were permitted to testify at trial as a result of the Preclusion Order.  107 ¶ 12.

"there is no coverage under the [] Policy for the claims against Happy Child in connection with the [Underlying Action]."  Doc 54-22 at 2.

### c.  The Instant Action

On June 3, 2020, Macklin, individually and as assignee of Happy Child, All Star, and Polk, brought the instant action against Sparta in the New York Supreme Court, County of New York, seeking enforce a $6,031,475.00 judgment, "minus any collateral source payments made by other insurers/parties," setting forth causes of action for breach of insurance policy and breach of duty of good faith.[13]  Doc. 1-1.  The following month, on July 14, 2020, the case was removed to this Court.  Doc. 1.  On September 29, 2020, the Court denied Macklin's motion to remand. Doc. 28.  On consent of the parties, the Court stayed this matter on April 28, 2021 for purposes of mediation.  Doc. 38.   Following failed mediation efforts, the Court lifted the stay on August 11, 2021.  Doc. 40.  The following month, during a September 17, 2021 conference, the Court granted Macklin leave to file an amended complaint, which Macklin filed on September 22, 2021.  Doc. 54.  On October 13, 2021, Sparta answered.  Doc. 55.

By letter dated October 29, 2021, Macklin sought leave to file a motion to strike or, alternatively, to move pursuant to Federal Rule of Civil Procedure ("FRCP") 56 for partial summary judgment on the issue of liability for breach of contract.  Doc. 59.  Sparta opposed Macklin's letter motion on November 3, 2021 and further requested permission to move for summary judgment (but only *after* various third parties complied with its subpoenas).  Doc. 60. Also on November 3, Sparta filed an amended answer, which is nearly identical to its previous

---

[13] Though Altfest is not named in this action, Macklin nonetheless asserts that she "has a direct right of action against . . . [Sparta] to enforce the terms of the judgment against [each of the Underlying Defendants] as a matter of law."  ¶ 135.

answer except that Sparta added Affirmative Defense No. 25.[14]  Doc. 61.  Two days later,

Macklin opposed Sparta's requests.  Doc. 62.  At a November 23, 2021 conference, the Court

granted Macklin leave to file a motion to strike various denials[15] and affirmative defenses[16] and

motion quash the third party subpoenas.

### d.  The Subpoenas

On February 23, 2021, prior to the mediation stay entered by the Court on April 28, 2021,

Sparta issued a subpoena to each of the following eight entities:  All Star,[17] Altfest,[18] Donohue,[19]

Happy Child,[20] Koenigsberg,[21] National Continental,[22] Sher Herman,[23] and Tri-State

---

[14] Affirmative Defense No. 25 provides:  "If the School Bus qualified as a 'covered auto' under the [] Policy (which is not conceded), it is based solely on material misrepresentations and fraud of Happy Child and All Star in obtaining the [] Policy."  Doc. 61 at 24.

[15] Macklin moves to strike the following denials:  ¶¶ 47–61, 63–64, 109-116, 135-141, 143–145, 148.  Doc. 61; *see* Doc. 80.

[16] Macklin moves to strike affirmative defenses 1–17 and 23–27.  Doc. 61; *see* Doc. 80.

[17] *See* Doc. 84-2 (subpoenaing for oral deposition of a designated corporate representative of All Star most knowledgeable about the Underlying Action, the relationship between the involved parties, and the relevant contracts and insurance policies; also subpoenaing for an array of documents, including:  the complete personnel file of Macklin and Polk; all its communications with Macklin or with anyone about Macklin or the Underlying Action or Underlying Accident; its complete file for Macklin's claim or the Underlying Accident; documents relating to the Policy or the Lease Agreement; documents reflecting the relationship between itself and Tri-State Employment Services, Happy Child, or Altfest).

[18] *See* Doc. 84-5 (subpoenaing for oral deposition of a designated corporate representative of Happy Child most knowledgeable about the Underlying Action, the relationship between the involved parties, and the relevant contracts and insurance policies; also subpoenaing for an array of documents, including:  the complete personnel file of Macklin and Polk; all its communications with Macklin or with anyone about Macklin or the Underlying Action or the Underlying Accident; its complete file for Macklin's claim or the Underlying Accident; documents relating to the Policy or the Lease Agreement; documents reflecting the relationship between itself and All Star).

[19] *See* Doc. 84-6 (subpoenaing for its entire file relating to the Underlying Action or the Underlying Accident, among other related documents and communications).

[20] *See* Doc. 84-3 (subpoenaing for oral deposition of a designated corporate representative of Happy Child most knowledgeable about the Underlying Action, the relationship between the involved parties, and the relevant contracts and insurance policies).

[21] *See* Doc. 84-7 (subpoenaing for a copy of its entire file regarding the Underlying Action or the Underlying Accident, among other related documents and communications).

[22] *See* Doc. 84-9 (subpoenaing for a copy of its entire claim file regarding the Underlying Action or the Underlying Accident, including claim notes, among other related documents and communications).

[23] *See* Doc. 84-8 (subpoenaing for oral deposition of a designated corporate representative of Sher Herman who is most knowledgeable regarding the Workers' Compensation claim filed by Macklin in connection with the Underlying Accident; also subpoenaing for a complete copy of its file for the claim, including any and all forms

Employment Services[24] ("Tri-State").  Macklin objected to the subpoenas on March 3, 2021 and instructed the subpoenaed parties not to respond until the issue was adjudicated.  Doc. 84 ¶ 34. Specifically, Macklin objected on the grounds that the subpoenas:  (1) requested Macklin's employment and tax records, and other materials in violation of Macklin's privacy rights, the attorney-client privilege, and the attorney work-product doctrine; (2) were overbroad and unduly duplicative; (3) sought Macklin's medical records, employment status, and other documents irrelevant to the instant litigation; and (4) demanded unnecessary depositions.  *Id*; *see* Doc. 84- 10.  Five days later, on March 9, 2021, Sparta objected to the subpoenaed parties' non- compliance.  *Id.* ¶ 35.

Approximately two weeks later, on March 23, 2021, Macklin advised the subpoenaed parties that the litigants would be entering mediation and there would be no need to respond to the subpoenas.  *Id.* ¶ 36.

Two months after the Court lifted the mediation stay, on October 18, 2021, Sparta demanded that the eight subpoenaed parties respond to the subpoenas within 30 days.  *Id.*  ¶ 37. The following day, Macklin wrote to Sparta and the subpoenaed parties, objecting to Sparta's demands.  *Id.*  Two days later, on October 21, 2021, Sparta advised the subpoenaed parties not to respond to the subpoenas until Macklin's objections had been adjudicated.  *Id.*

In early December 2021, Sparta advised Macklin of its intention to subpoena another third party, Capacity, Happy Child's insurance broker.  *Id.* ¶ 37.  For the same reasons Macklin

---

submitted on Macklin's behalf to the New York Workers' Compensation Board, excluding any medical records or reports, among other related communications and documents).

[24] Macklin claims that Tri-State was her employer at the time of the Underlying Accident.  *See* 110 at 12.  Sparta subpoenas Tri-State for oral deposition of a designated corporate representative of Tri-State who is most knowledgeable about the relationship between Tri-State and All Star and regarding the identity of Macklin's employer on May 5, 2014.  Sparta also subpoenas for a complete copy of Tri-State's personnel file for Macklin and Polk, all communications with Macklin, and all files relating to the Underlying Accident, among other related documents and correspondence.  *See* Doc. 84-4.

had objected to the original subpoenas, Macklin objected to this one as well.  *Id.*  The parties

agreed to have the Capacity subpoena adjudicated alongside the others.  *Id.*  The record before

the Court does not indicate that the subpoena to Capacity was ever served.  *See* Doc. 110 at 11

(referring to the subpoena as "proposed").

Ultimately, on February 8, 2022, Macklin filed its motion to strike various affirmative

defenses and denials, and to quash the subpoenas.  *See* Doc. 79; Doc. 82.

## II.   DISCUSSION

### a.  Motion to Strike

#### i.  Standard

Under FRCP 12(f), the Court may strike any "insufficient defense or any redundant,

immaterial, impertinent or scandalous matter" of its own accord or on motion by a

party.  Motions to strike however, are generally disfavored, *City of New York v. FedEx Ground

Package Sys., Inc.*, No. 13 Civ. 9173 (ER), 2017 WL 633445, at *2 (S.D.N.Y. Feb. 14, 2017),

and "courts should not tamper with the pleadings unless there is a strong reason for so doing,"

*Lipsky v. Commonwealth United Corp.*, 551 F.2d 887, 893 (2d Cir. 1976).  Accordingly, a

motion to strike a defense "will not be granted unless it appears to a certainty that plaintiffs

would succeed despite any state of the facts which could be proved in support of the

defense."  *William Z. Salcer, Panfeld, Edelman v. Envicon Equities Corp.*, 744 F.2d 935, 939 (2d

Cir. 1984) (internal quotation marks omitted).

Courts in this Circuit typically apply a stringent three-part test to motions to strike:  "(1)

there must be no question of fact that might allow the defense to succeed; (2) there must be no

substantial question of law that might allow the defense to succeed; and (3) the plaintiff must be

prejudiced by the inclusion of the defense." *See, e.g.*, *FedEx*, 2017 WL 633445, at *3; *Specialty*

12

*Mins., Inc. v. Pluess-Stauger AG*, 395 F. Supp. 2d 109, 111 (S.D.N.Y. 2005) (same).  When considering the first and second prongs, courts apply a similar legal standard as that applicable to a motion to dismiss under Rule 12(b)(6):  they must determine the "sufficiency of a defense . . . solely upon the face of the pleading" and "accep[t] as true all well-pleaded factual allegations and dra[w] all reasonable inferences in the [non-moving party's] favor."  *Coach, Inc. v. Kmart Corps.*, 756 F. Supp. 2d 421, 425 (S.D.N.Y. 2010).  Mere assertions of prejudice by the moving party are insufficient to satisfy this prong.  *County Vanlines Inc. v. Experian Information Solutions, Inc.*, 205 F.R.D. 148, 153 (S.D.N.Y. 2002).

### ii.  Standing

Macklin alleges that she has standing as a matter of law pursuant to N.Y. Insurance Law § 3420, as well as by virtue of the Assignment, to bring her claims on behalf of the Underlying Defendants.  *See* Doc. 80 at 5.  In its amended answer, however, Sparta asserts affirmative defenses for lack of standing and challenging the Assignment (i.e., affirmative defense numbers 3, 8, 11, and 17), which Macklin now seeks to strike.  *See* Doc. 61.

Presently, Sparta does not dispute that Macklin has standing, pursuant to § 3420(b), to collect on the judgment she obtained in the Underlying Action up to the $1 million limit of the Policy.[25]  *See* Doc. 108 at 10.  Sparta nonetheless asserts that § 3420(b) does not provide Macklin standing to allege that it acted in bad faith in disclaiming coverage on behalf of Polk or Alfest.  In support of its position, Sparta cites the following opinion by the Fourth Department:

---

[25] Sparta indicated as such in a December 27, 2021 email to Macklin.  Doc. 81-41 at 2.  ("Sparta does not contest Plaintiff's standing to seek payment under the [] Policy in connection with the judgement entered against Happy Child (up to the [] Policy Limit) in accordance with New York Insurance Law § 3420, nor does it contest her standing to assert bad faith as a result of the assignment she received from Happy Child and All Star Bus Company. Sparta does, however, maintain its position that Macklin lacks standing to assert a bad faith claim vis-à-vis Altfest and Levander Polk, as we have not seen any evidence of a similar assignment from either of those two underlying defendants[.]")

> [U]nder Insurance Law § 3420(a)(2) and (b)(1), an injured party's standing to bring an action against an insurer is limited to recovering only the policy limits of the insured's insurance policy. . . .  [I]f an injured party/judgment creditor seeks to recover from the insurer an amount above the insured's policy limits on a theory of liability beyond that created by Insurance Law § 3420(a)(2), the statute does not confer standing to do so.  However, if the insured assigns his or her rights under the insurance contract to the injured party/judgment creditor, then the injured party/judgment creditor may simultaneously bring a direct action against the insurer pursuant to Insurance Law § 3420(a)(2) along with any other appropriate claim, including a bad faith claim, seeking a judgment in a total amount beyond the insured's policy limits

*Id.* (quoting *Corle v. Allstate Ins. Co.*, 162 A.D.3d 1489, 79 N.Y.S.3d 414 (4th Dep't 2018)).

Sparta also argues that the Second Department has held similarly.  *See id.* (citing *Nationwide Mut. Fire Ins. Co. v. Oster*, 193 A.D.3d 951, 147 N.Y.S.3d 97 (2d Dep't 2021).

Therefore, Sparta contends that for Macklin to have standing to bring her bad faith claim, she must establish—at this stage, with "*certainty*," *Envicon Equities Corp.*, 744 F.2d at 939 (emphasis added)—that All Star, Altfest, Happy Child, and Polk assigned her the right to do so. With respect to Altfest and Polk, Sparta asserts that she has failed to do so, since the Assignment bears only the signatures of All Star and Happy Child and does not reference Altfest.  *See* Doc. 108 at 12.

In response, Macklin argues that while "'assignment of the defendant's bad faith claim to the plaintiff in a personal liability suit is the *ordinary* mechanism for pursuing such claim against the insurer, usually in exchange for a covenant not to execute on the judgment,'" (quoting *Pinto v. Allstate Ins. Co.*, 221 F3d 394, 403 (2d Cir. 2000)) (emphasis added).  However, while the Second and Fourth Department *have* found that § 3420(a)(2) does not alone confer an injured party standing to bring a claim of bad faith, the First Department has held to the contrary.  *See, e.g.*, *Cirone v. Tower Ins. Co. of NY*, 76 AD3d 883 (1st Dep't. 2010).  Macklin also contends that the Second and Fourth Department rulings are contrary to the Court of Appeals' general rule that

14

"an injured party's rights to pursue recovery from an insurer are no greater and no less than those of a tortfeasor-insured seeking the same," (citing *Lang v. Hanover Ins. Co.*, 3 NY3d 350, 354–355 (2004), along with the Second Circuit's general rule, that it is "antithetical to § 3420 to curtail the rights of the injured party as compared to the putative insured," (citing *Cont. Ins. Co. v. Atl. Cas. Ins. Co.*, 603 F3d 169, 176 (2d Cir. 2010).

In any event, Macklin argues that the Court need not decide whether § 3420 confers standing to bring her bad faith claim because she has already proved the assignment of rights from Sparta's insured.  She alleges that Happy Child, as the insured, has the right to press for coverage for Polk, its employee.  Macklin also contends that she may also press for coverage for Altfest because the Lease Agreement establishes that Altfest is (1) an additional insured under the Policy because the lease meets the definition of "insured contract" and (2) is entitled to indemnification from Happy Child, which is covered under the Policy because Sparta never cited the breach of contract exclusion.  *See* Doc. 99 at 6.

As a preliminary matter, the Court finds that in light of the divide between the Fourth and Second Departments and First Department over whether § 3420 confers an injured party standing to bring the bad faith claim, "a substantial question of law" plainly exists.  *FedEx*, 2017 WL 633445, at *3.  Macklin therefore cannot prevail on its motion to strike that ground.

Separately, the Court further finds that it cannot on the present record find that Macklin has the right to bring a bad faith action against Sparta on behalf of Polk or Altfest through the Assignment, as Macklin contends.  To prove standing to bring her bad faith claim on behalf of Polk, Macklin alleges that Happy Child has the right to press for coverage for Polk since the Policy generally provides coverage for Happy Child's employees.  *See* Doc. 81-43 at 101–102. The Court cannot definitively conclude at this early stage of litigation that Sparta can make no

argument—or learn no fact during the course of discovery—that would allow it to succeed on this claim.  Similarly, with respect to Altfest, it has not yet been established that the Lease Agreement meets the definition of an "insured contract," that Altfest is thereby an insured under the Policy, or that Altfest is therefore entitled to indemnification from Happy Child.

Critically, the Assignment reflects only the express agreement of Happy Child and Allstar.  Thus, the Court holds that there remains an outstanding question with respect to whether Macklin has standing to bring a bad faith claim on behalf of Polk and Altfest.  Accordingly, Macklin's motion to strike Sparta's affirmative defenses to the contrary is denied.[26]

### iii.  Factual Denials

Macklin argues that there is no genuine dispute that she has standing to bring her claims on behalf of the Underlying Defendants.  She thus moves the Court strike the denials in ¶¶ 135–141, 143, 144–45, 148 of Sparta's answer to the FAC.  Doc. 80 at 5.  Macklin also argues that additional denials in Sparta's Amended Answer (i.e., ¶¶47–50, 51–55, 56–61, 63–64, 109–116) are "frivolous, plainly belied by the record, and asserted without any basis in fact or law."  Doc. 80 at 7.

Sparta argues FRCP 12(f) does not afford Macklin the right to seek to have factual *denials* stricken, noting that the plain language of the statute provides that "a court may strike from a pleading 'an insufficient defense or any redundant, immaterial impertinent or scandalous matter.'"  *See* Doc. 108 at 12 (emphasis in the original).  Sparta also cites *Eres v. Progressive*

---

[26] Relatedly, Macklin argues that Sparta, in its December 27, 2021 email, *see* Doc. 81-41, modified its affirmative defenses to challenge Polk and Altfest's standing, "add[ing] new terms" in "violat[ion] of [FRCP] 8(b)(1)(A)."  *See* Doc. 80 at 6.  This section of the rule, however, requires only that a party responding to a pleading "state in short and plain terms its defenses to each claim asserted against it."  Courts in this Circuit have recognized that "notice pleading suffices to plead an affirmative defense." *Sibley v. Choice Hotels International, Inc.*, 304 F.R.D. 125, 132 (E.D.N.Y. 2015).  Sparta argues that, in this instance, it sought to clarify its defense regarding Plaintiff's standing. *See* Doc. 108 at 12.  The Court agrees with Sparta that it has not violated FRCP 8(b)(1)(A).  Relatedly, the Court finds that Sparta's email did not make any concessions with respect to Altfest and Polk's standing.

*American Insurance Company*, 8:17 Civ. 2354, 2018 WL 5084724, at *1 (M. D. Fla. Sept. 26, 2018), wherein the court held that "the purpose of [FRCP] 12(f) is to strike factual allegations and affirmative defenses" and not denials in a defendant's answer ("Plaintiff has failed to cite a single case to support her desired use of [FRCP]12(f) to strike *denials* in Defendant's Answer. Indeed, the cases Plaintiff does cite demonstrate that the purpose of FRCP 12(f) is to strike factual allegations and affirmative defenses.") (emphasis in the original).  Consistently, the Committee Notes on FRCP 12(f) support the *Eres* court's construction of the rule.  ("[T]his amendment affords a specific method of raising the insufficiency of a *defense*.") (emphasis added).

Like the moving party in *Eres*, Macklin, here, does not point to a single case where a federal court has found that FRCP 12(f) is an appropriate vehicle to strike a defendant's denials. The Court has not found one either.  Macklin simply concludes, without citing any authorities, that Sparta's characterization of the rule is "inaccurate."  *See* Doc. 99 at 3, n.1.  Macklin and Sparta may well have different interpretations of underlying facts; but the parties' dispute is best resolved through discovery.  Accordingly, the Court denies Macklin' motion to strike denials in Sparta's amended response.

### iv.  Disclaimer of Coverage

Macklin argues that Sparta failed to timely disclaim coverage under either the CGL or Business Auto coverage parts after receiving notice of Macklin's claim and injuries as early as June 2014, thereby violating § 3420(d)(2), and rendering ineffective its 2019 Disclaimer.  *See* Doc. 54-2; Doc. 54-3; Doc. 80 at 9–11.  Accordingly, Macklin moves to strike all of Sparta's affirmative defenses related to the breach of contract claim (i.e., *every* affirmative offense set forth by Sparta except for numbers 18 through 22).  *Id.*

"Under New York law, in cases involving death and bodily injury claims arising out of a New York accident and brought under a New York liability policy, [§ 3420(d)(2)] requires the insurer to provide a timely disclaimer for denials of coverage." *Pearson Capital Partners LLC v. James Riv. Ins. Co.*, 151 F. Supp. 3d 392, 404 (S.D.N.Y. 2015) (internal quotation marks and citations omitted). "Disclaimer is considered unnecessary[, however,] when a claim falls outside the scope of an insurance policy's definition of coverage because in that situation, the insurance policy does not contemplate coverage in the first instance, and requiring payment of a claim upon failure to timely disclaim would create coverage where it never existed." *Id.* at 409 (quoting *Britt v. Gen. Star Indem. Co.*, 494 Fed.Appx. 151, 153 (2d Cir. 2012) (internal quotation marks omitted). But "[f]ailure to provide a § 3420(d) disclaimer precludes denial of coverage based on a policy exclusion." *Britt*, 494 Fed.Appx. at 152–53. The New York Court of Appeals has construed "timely" to mean "as soon as reasonably possible." *Country-Wide Ins. Co. v. Preferred Trucking Servs. Corp.*, 22 NY3d 571, 576 (N.Y. 2014). Absent excuse or mitigating circumstances, even "relatively short periods" are "unreasonable as a matter of law." *Travelers Inc. Co. v. Volmar Constru. Co.*, 300 A.D. 2d 40, 43 (1st Dep't 2002). "Under [§ 3420(d)(2)], if an insurer fails to timely disclaim coverage, it is 'precluded from later successfully disclaiming coverage.'" *Pearson*, 151 F. Supp. 3d at 404 (quoting *Ngm Ins. Co. v. Blakely Pumping, Inc.*, 593 F.3d 150, 153 (2d. Cir. 2010). Moreover, "a repudiation of liability by an insurer on the ground that the loss is not covered by the policy operates as a waiver of the notice requirements contained in the policy." *Burt Rigid Box, Inc. Travelers Property Cas. Corp*, 302 F.3d 83 at 96 (2d Cir. 2002) (collecting cases) (internal quotation marks and citations omitted). Notice by an injured claimant constitutes sufficient notice of a claim regardless of whether the insured also provided notice. Ins. L. § 3420(a)(3).

Here, Macklin specifically argues:  (1) the June 2014 Letters, along with her counsel's calls to Gallagher in July 2014 and September 2015, notified Sparta of the Underlying Accident and bodily injury claims;  (2) bodily injury claims fall within the scope of coverage of the CGL or Business Auto Coverage Parts; (3) upon receiving notice, Sparta was required to disclaim coverage "as soon as reasonably possible," *Country-Wide*, 22 N.Y.3d at 576, pursuant to § 3420(d)(2); (4) Sparta never disclaimed coverage under the CGL Part of the Policy; (5) Sparta's September 27, 2019 Disclaimer Letter untimely disclaimed coverage under the Business Auto Part more than five years after it first received notice of Macklin's claim; (6) the Disclaimer Letter denies coverage on the basis of various Policy exclusions; (7) the Disclaimer also denies coverage because Macklin failed to timely notify Sparta of the Underlying Action;[27] (8) having failed to timely disclaim coverage, Sparta is now entirely precluded from denying coverage under § 3420(d)(2); (9) having twice repudiated coverage over the phone through its agent, Gallagher, in July 2014 and October 2015, Sparta, in any event, could not rely on policy exclusions (or on the fact that Macklin failed to give timely notice of the Underlying Action) in its Disclaimer Letter; (10) Sparta breached its contract, and the Court should strike its affirmative defenses against that claim.

Critically, neither of the June 2014 Letters—or the phone calls—notified Sparta of a *lawsuit*; they notified Sparta of the Underlying Accident.  *See* Doc. 54-2; Doc. 54-3.  Indeed, Sparta did not learn of the Underlying Action until receiving verbal notice of the Settlement Letter from Capacity on September 20, 2019.  And it did not receive a copy of the complaint

---

[27] The Disclaimer Letter explains that Sparta only learned of the Underlying Litigation on September 20, 2019—days before trial, which began on September 27, 2019—when Happy Child informed Sparta of Macklin's September 18, 2019 Settlement Letter.  *See* Doc. 54-8; Doc. 54-9.

until six days later, *hours* before the first day trial, and long after the Preclusion Order and summary judgment orders were issued. *See* Doc. 110 at 13.

In addition to requiring notice of the "event of accident, claim, suit or loss," the Policy also stipulates that "[a]*dditionally* . . . [the insured] *and* any other involved insured *must* . . . [send Sparta] copies of any request, demand, order, notice, summons or legal paper received concerning the claim or suit *as soon as reasonably possible*." Doc. 81-44 at 9–10 (emphasis added) (internal quotation marks omitted). The Policy specifies that if "failure to comply with [that] dut[y] is prejudicial to [Sparta]," it has "no duty to provide coverage[.]" *Id.* at 9. Sparta contends that Happy Child and Macklin's failure to comply with this provision resulted in severe prejudice (i.e., its inability to mount a proper defense in the Underlying Action) and, accordingly, relieves Sparta of any duty to provide coverage to Macklin under the Policy. *See* Doc. 108 at 20–21.[28] In support of this contention, Sparta cites the following passage from *Fisher v. Hanover Ins. Co.*:

> While [] pre-commencement settlement discussions between [a] defendant and plaintiff[] may establish that defendant had notice of the accident and plaintiff's claim under Insurance Law § 3420(a)(3), neither those contacts nor [a] letter to defendant alleging that service had been obtained is sufficient to cure [] breach of the specific policy provision requiring the [insured's] prompt forwarding of legal papers, and that breach justifies defendant's disclaimer.

288 A.D.2d 806, 807 (3d Dep't 2001) (citing *Centenniel Ins. Co. v. Hoffman*, 265 A.D.2d 629, 685 (3d Dep't 1999). In other words, providing an insurer notice of a claim or prospective legal

---

[28] Macklin calls the Policy as possibly "ambiguous" as to whether Sparta is placed on notice if, as Macklin alleges here, an injured party notifies it of the Underlying Accident and claim but fails to provide timely notice of a subsequent legal action. Macklin nonetheless insists that "ambiguous [policies] must be interpreted against . . . the drafter [i.e., Sparta]," and so the Court should come out in her favor. Doc. 99 at 11. (citing *Pearson*, 151 F. Supp. 3d at 406). Macklin is incorrect. The contract's ambiguity, however, indicates that there is a genuine dispute over material fact over whether the contract was breached. *See, e.g.*, *BanxCorp v. Costco Wholesale Corp.*, 978 F. Supp. 2d 280 (S.D.N.Y. 2013) (noting that where the "relevant contractual language [was] ambiguous, . . . there [was] a genuine dispute of material fact regarding whether the [d]efendant breached the contract"). As already noted, in ruling on a motion to strike, "there must be no question of fact that might allow the defense to succeed." *See, e.g.*, *FedEx*, 2017 WL 633445, at *3.

action, does not obviate a separate contractual duty to timely notify the insurer of an actual legal proceeding.  Like the insured in *Fisher*, Sparta contends that Macklin cannot escape liability for her contractual breach by pointing to "pre-commencement" correspondence that occurred prior to the Underlying Action.

In response, Macklin argues that *Fisher* and *Centenniel* are distinguishable in that in those cases, the insurers received notice *after* default judgment had already been entered in the underlying actions.  *See* Doc. 99 at 12, n.7.  The dispositive factor in both of those cases, however, was *not* that notice arrived post-judgment, but rather that the insureds "breach[ed] specific policy provision[s] requiring" timely notice.  *Fisher* 288 A.D.2d at 807.  In *Fisher*, the policy required the "prompt forwarding of legal papers."  In *Centenniel*, the policy required giving "immediate notice [of the] action."  265 A.D.2d at 630.  And, here, the Policy required sending copies of "legal paper concerning the claim or suit *as soon as reasonably possible*."  Doc. 81-44 at 9–10 (emphasis added).  On this ground, alone, the Court refuses to strike any of Sparta's affirmative defenses to Macklin's breach of contract claim.  There are, however, more reasons.

The June Letters that Macklin contests provided Sparta notice were addressed to the "No Fault Claims Department" and the "Bodily Injury Claims Department."  *See* Doc. 54-2; Doc. 54-3.  While Sparta asserts that it has no "Bodily Injury Claims Department," the No Fault Letter "advised that [Macklin] was also making a claim [in addition to her No Fault claim] under the uninsured/underinsured *motorist* provision."  Doc. 108 at 15 (emphasis added).  The Bodily Injury Letter could similarly be interpreted only to assert coverage under the Business Auto Part of the Policy—not the CGL Part—since the letter pertained to an auto accident.  *See id*; *see also*

Doc. 54-3.  Accordingly, it may be the case that Macklin did not notify Sparta of its claim for coverage under the CGL Part.

Furthermore, important questions continue to surround Macklin's counsel's July 2014 and September 2015 calls to Gallagher.  Sparta's records indicate that on July 9, 2014, Macklin's counsel called Sparta to follow up on its claim:  presumably, either the Bodily Injury Letter or the No Fault Letter.  They did so again on September 8, 2015.  ¶¶ 54, 58.  Both times, Sparta's records indicate that Macklin's counsel received the same answer from Gallagher:  that the claim was reported in error and that the proper insurer is Progressive Insurance.  Presently, it has not been conclusively established whether Gallagher denied coverage with respect to Macklin's "bodily injury" claim, the "no fault" claim, or both.  It is also unclear under which part of the Policy (if any) Gallagher denied coverage.  What's more, it is uncertain whether Gallagher's denials constitute *repudiations* (as Macklin calls them)[29] or *disclaimers*, and the resultant legal consequences.[30]  And it has not yet known with certainty whether Gallagher—as Sparta's third-party administrator—had the right to make those denials as Sparta's agent.  Sparta is currently seeking discovery regarding the nature of these calls.  *See* Doc. 108 at 16.  Accordingly, the Court concludes that at this stage of litigation, facts may well arise that rebut Macklin's legal analysis.

---

[29] Macklin's memorandum in support of her motion to strike repeatedly states that Sparta repudiated liability for coverage in 2014 and 2015.  *See* Doc. 80 at 9, 11, 13, 16, 18.

[30] *See PB Americas Inc v. Continental Cas. Co.*, 60 F. Supp. 2d 242, 250 (S.D.N.Y. 2010) ("In *Seward Park Housing Corp. v. Greater N.Y. Mut. Ins. Co.,* the Appellate Division observed that courts had been using the terms 'repudiation' and 'disclaimer' interchangeably.  43 A.D.3d 23, 30–31, 836 N.Y.S.2d 99 (1st Dep't 2007).  The court noted that where an insurer 'shape [s] its conduct in accordance with the provisions of the contract' and 'explain [s] the denial of coverage with reference to policy provisions and exclusions,' this is a 'disclaimer' of coverage, not a 'repudiation' of the contract of insurance.  *Id.* at 32.  'If an insurer repudiates the policy, the insured is relieved of its policy obligations; conversely, if the insurer merely disclaims an individual claim, the insured continues to be obligated to comply with its contractual responsibilities.'  *Bear Wagner Specialists, LLC v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.,* No. 650261/08, 2009 WL 2045601, at *7 (N.Y. Sup. Ct., July 7, 2009); *see Nat'l R.R. Passenger Corp. v. Steadfast Ins. Co.,* No. 06 Civ. 6072, 2009 WL 562610, at *13 (S.D.N.Y. Mar. 5, 2009)").

For reasons set forth above, the Court denies Macklin's requests to strike any of Sparta's affirmative defenses pertaining to her breach of contract claim.

### v. Affirmative Defenses[31]

#### 1. Late Notice

Macklin argues that there is no basis in fact or law to support Sparta's late notice defense and that it should therefore be struck.  Macklin also argues that even if notice *was* untimely, Sparta cannot show that it was *prejudiced* by such delay, which is a necessary condition for an insurance company to prevail on a late notice defense.  *See id.* (citing *Peerless Ins. Co. v. Tech Ins. Co.*, 829 F App'x 549, 552 (2d Cir. 2020)).

For reasons already set forth the Court cannot conclude that Macklin or Happy Child gave timely notice to Sparta, or that they upheld their notice obligations under the Policy.  As also noted, Sparta did not receive notice of the Underlying Action until September 20, 2019 and did not receive copy of the complaint until September 27, 2019, on the eve of trial.  Therefore, Sparta makes plausible a claim of prejudice, particularly in light of the Preclusion Order entered by the trial court.  *See* Doc. 108 at 21–22.  For these reasons, the Court denies Macklin's request to strike this affirmative defense.

#### 2. The "Employer Exclusions"

Macklin argues that Sparta may not rely on the "Employer Exclusions" contained in the Policy because "it is the liability determination that governs the duty to indemnify," (citing *Frontier Insulation Contractors, Inc. v. Merchants Mut. Ins. Co.*, 91 N.Y.2d 169, 178 (1997) (finding that "the duty to pay is determined by the actual basis for the insured's liability to a third

---

[31] Because Sparta has withdrawn its affirmative defense based on fraud and/or misrepresentation, as well as its affirmative defense based on non-cooperation, the Court does not discuss the basis for either defense.  *See* Doc. 108 at 26, 28.

person") (internal quotation marks and citation omitted)).  An "insurer cannot rely upon exclusions to deny coverage if doing so requires a separate factual determination than that which binds the insured." *Id.* (citing *K2 Inv. Group, LLC v. American Guar. & Liab. Ins. Co.*, 22 N.Y.3d 578, 585–86 (2014) ("An insurer that rejects a valid request for defense is bound by facts necessarily decided in the underlying action, but the terms of the insurance policy determine the scope of coverage.") (collecting cases)).

Macklin reasons that in the Underlying Action, the court twice rejected the Underlying Defendants' argument that Macklin was an employee of Happy Child and that Sparta, in the instant litigation, is bound by that finding.  *See id.* at 15.  In response, Sparta argues that the court never *actually* found that Happy Child was not Macklin's employer; the court held only that the Underlying Defendants had not met their burden of proving that she was.  *See* Doc. 108 at 24.  In *K2*, Sparta reasons, the court prevented the insurer only from relitigating facts *necessarily* decided in the underlying action—not from relitigating facts for which the underlying litigants failed to make the requisite evidentiary showing.  *Id.* (citing *K2*, 22 N.Y.3d 578 at 983).  Accordingly, Sparta asserts that it may now litigate the issue of Macklin's employment and obtain discovery on it.

At this early stage of litigation, discovery has not been completed and the outcome of this question is not certain.  The Court therefore denies Macklin's request to strike the corresponding affirmative defenses.

### 3.  Laches

Macklin also moves to strike Sparta's laches defense.  *See* Doc. 80 at 18–20.  "Laches is defined as such neglect or omission to assert a right as, taken in conjunction with the lapse of time, more or less great, and other circumstances causing prejudice to an adverse party, operates

as a bar in a court of equity." *Schulz v. State*, 81 N.Y.2d 336, 348, 599 N.Y.S.2d 469, 615 N.E.2d 953 (N.Y. 1993) (internal quotations omitted); *accord Lincoln Nat'l Life Ins. Co. v. Inzlicht-Sprei*, No. 16 Civ. 5171 (PKC) (RML), 2020 WL 1536346, at *10.

Macklin argues that Sparta's latches defense is baseless because she timely notified Sparta of her injuries and claims via the 2014 Letters and her phone calls to Gallagher. For the reasons already given, however, questions remain as to whether Macklin provided timely notice to Sparta. Sparta's contention that it was not notified of the Underlying Claim until the eve of trial and was thereby prejudiced—insofar as it did not have the opportunity to fully investigate the claim or to participate in the defense of the Underlying Action—is not without basis. *See* Doc. 108 at 28. Because this argument is plausible, the Court will not strike it.

### b. Motion to Quash [32]

#### i. Standard

FRCP 26 provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case …." Fed. R. Civ. P. 26(b)(1). Discoverability is determined by the broad standard of relevance. *See Gucci Am., Inc. v. Guess ?, Inc.*, 790 F. Supp. 2d 136, 139 (S.D.N.Y. 2011). The relevance standard "has been construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978). The scope of FRCP 26(b), however, is not unlimited; FRCP 26 has been amended to strike "the proper balance between the need for evidence, and the avoidance of undue burden and expense." *Kaye v. New York City*

---

[32] With respect to the prospective subpoena to Capacity, the Court will not issue an advisory opinion on a proposed subpoena that has not yet been served. Doc. 110 at 25.

*Health & Hosps. Corp.*, No. 18 Civ. 12137 (JPC) (JLC), 2020 WL 7237901, at *4 (S.D.N.Y. Dec. 9, 2020) (internal quotation marks omitted).

"The party seeking discovery bears the burden of initially showing relevance, and as such he or she must make a *prima facie* showing that the discovery sought is more than merely a fishing expedition." *Id.* at *4 (internal quotation marks omitted). "The party resisting discovery bears the burden of showing why discovery should be denied." *Cole v. Towers Perrin Forster & Crosby*, 256 F.R.D. 79, 80 (D. Conn. 2009). "General and conclusory objections as to relevance, overbreadth, or burden are insufficient to exclude discovery of requested information." *Melendez v. Greiner*, No. 01 Civ. 7888 (SAS) (DF), 2003 WL 22434101, at *1 (S.D.N.Y. Oct. 23, 2003). Instead, the resisting party must show "specifically how, despite the broad and liberal construction afforded the federal discovery rules, each interrogatory is not relevant or how each question is overly broad, burdensome or oppressive." *Fort Worth Employees' Retirement Fund v. JP. Morgan Chase & Co.,* 297 F.R.D. 99, 102-03 (S.D.N.Y. 2013) (internal quotation marks omitted).

FRCP 45(d) requires the court to quash or modify a subpoena that: (i) fails to allow a reasonable time to comply; (ii) requires a person to travel more than 100 miles of where the person resides, is employed, or regularly transacts business in person; (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or (iv) subjects a person to undue burden. Fed. R. Civ. P. 45(d)(3)(A).

"On a motion to quash, 'the party issuing the subpoena must demonstrate that the information sought is relevant and material to the allegations and claims at issue in the proceedings . . . .' Upon establishing relevance, 'the movant bears the burden of demonstrating an undue burden.'" *Id.* (quoting *Shaw v. Arena*, No. 17 Misc. 448, 2018 WL 324896, at *1

(S.D.N.Y. Jan. 3, 2018) (internal quotation marks and citation omitted) and *Griffith v. United States*, No. M8-85, 2007 WL 1222586, at \*2 (S.D.N.Y. Apr. 25, 2007)).  In determining whether a subpoena subjects a witness to undue burden, a court must "balance the interests served by demanding compliance with the subpoena against the interests furthered by quashing it; this process of weighing a subpoena's benefits and burdens calls upon the trial court to consider whether the information is necessary and whether it is available from any other source.  It obviously is a highly case specific inquiry and entails an exercise of judicial discretion." *Aristocrat Leisure Ltd. v. Deutsche Bank Trust Co. Americas*, 262 F.R.D. 293 (2009) (quoting *Concord Boat Corp. v. Brunswick Corp.*, 169 F.R.D. 44 (S.D.N.Y. 1996)).  "Inconvenience alone will not justify an order to quash a subpoena that seeks potentially relevant testimony." *Id.* (quoting *Kirschner v. Klemons*, No. 99 Civ. 4828, 2005 WL 1214330 (S.D.N.Y. 2005) at \*2).

### ii.  Standing

As a threshold matter, "[e]ven where a party properly moves . . . to quash a non-party subpoena, it must establish that it has standing to quash."  *United States ex rel. Ortiz v. Mount Sinai Hospital*, 169 F. Supp. 3d 538, 544–45 (S.D.N.Y. 2016).  "A party ordinarily lacks standing to quash a subpoena directed at a non-party unless the party is seeking to protect a personal privilege or right."  *Nova Products Inc. v. Kisma Video, Inc.*, 220 F.R.D. 238, 241 (S.D.N.Y. 2004); *see also Mirkin v. Winston Resources, LLC*, No. 07 Civ. 02734, 2008 WL 4861840, at \*1, (S.D.N.Y. Nov. 10, 2008) ("A plaintiff has standing to quash a subpoena of a non-party where the plaintiff asserts a legitimate privacy interest in the information sought."); *Rodriguez v. NNR Global Logistics USA Inc.*, No. 14 Civ. 1766 (JFB) (AKT), 2016 WL 11673310, at \*3 (E.D.N.Y. Mar. 31, 2016) (finding that a plaintiff has a legitimate privacy interest in employment records). "The claim of privilege or right must be personal to the movant,

not to the non-party witness on whom the subpoenas was served." *Samad Bros., Inc. v. Bokara Rug Co. Inc.*, No. 06 Civ. 5843 (JFK) (KNF), 2010 WL 5094344, at *2 (S.D.N.Y. Nov. 30, 2010).  "The proponent of the privilege may not assert blanket or categorical claims of privilege, but must show that the privilege applies to each communication for which it is asserted." *Id.* at *2.  "[T]he party invoking a privilege bears the burden of establishing its applicability," and that "burden is a heavy one, because privileges are neither 'lightly created nor expansively construed.'" *See In re Grand Jury Subpoenas Dated March 19, 2002 and August 2, 2002*, 318 F.3d 379, 384 (2d Cir. 2003) (internal quotation marks and citations omitted).

Here, Sparta acknowledges that Macklin has standing to bring her motion to quash insofar as it seeks to quash the subpoenas issued to her counsel (Koenigsberg and Sher Herman) and to Tri-State, which she alleges was her employer at the time of the Underlying Accident.[33] *See* Doc. 110 at 12.  Sparta argues, however, that Macklin does not have standing to move to quash the subpoenas issued to All Star, Altfest, Donohue, or Happy Child, nor with respect to its proposed subpoena to Capacity, because she has no interest in the information those entities may possess.  *See id.*

### 1.  All Star and Happy Child

Because Macklin is the assignee of All Star and Happy Child, the court finds that she has standing to object to discovery demands on behalf of her assignors, just as she presses for their substantive rights in this lawsuit.  Caselaw is consistent with this holding.  *See, e.g.*, *Royal Park Invs. SA/NV v. Deutsche Bank Nat'l Tr. Co.*, No. 14 Civ. 4394, 2016 WL 4613390, at *3 (S.D.N.Y. Aug. 31, 2016) (noting that an "assignee, pressing the rights of its assignors . . . must also assume the discovery obligations of those assignors").  Sparta, moreover, has not identified

---

[33] Sparta also does not contend that Macklin lacks standing to quash the subpoena to National Continental.  *See* Doc. 110 at 12.

any case to suggest that an assignee does not have standing to object to a subpoena issued to her assignor.

### 2. Donohue

Donohue acted as defense counsel for Happy Child and All Star in the Underlying Action. Macklin, here, has stepped into the shoes of Happy Child and All Star by virtue of the Assignment. The subpoena seeks a broad array of communications and documents, including a copy of Donohue's "entire file . . . with respect to the Underlying Accident and the Underlying Action." *See* Doc. 84-6 at 7. Sparta acknowledges that Macklin has standing to bring her motion to quash the subpoenas issued to her counsel, Koenigsberg and Sher Herman. As assignee of Happy Child and All Star, Macklin also has the authority to move to quash subpoenas issued to the counsel of her assignors, just as her assignors could do if they had brought the instant action themselves.

### 3. Altfest

Macklin, however, has not established that she is an assignee of Altfest, as Altfest is not a party to the Assignment. In her March 3, 2021 letter to Sparta, Macklin objected to the Altfest subpoena to the extent that it requested medical, employment, and tax records, and any other materials falling under the attorney-client privilege or the attorney work-product doctrine. *See* Doc. 84-10. Although the subpoena to Altfest *may* seek information in which Macklin, All Star, or Happy Child may have a privilege or privacy interest, absent any express objections to any specific requests of the subpoena, the Court finds that she has not met her heavy burden to establish standing.[34]

---

[34] While Macklin contends that Altfest is out of business, Sparta argues that the New York State Department of State lists Altfest as an *active* company. *See* Doc. 110 at 11. Whether in business or not, the Court will not quash the subpoena Altfest.

### iii.  Relevancy

The remaining seven subpoenas are to the following parties:  All Star, Donohue, Happy Child, Koenigsberg, National Continental, Sher Herman, and Tri-State,[35] all of whom bear some connection to the Underlying Accident, and some of whom are interested parties in the current litigation.  In the Court's view each of the subpoenaed entities may well contain information relevant to factual and legal questions surrounding the instant dispute.

For example, and as already determined, Sparta has set forth a colorable legal basis for its investigation in Macklin's employment status:  so that it may properly discern the applicability of the various employment exclusions under the Policy.  Accordingly, Macklin's communications with her employment lawyers, Happy Child, Happy Child's sister company, Altfest, and her purported previous employer, Tri-Star, may well bear relevance to issues surrounding the instant action.  So too is the question of whether Capacity told Gallagher that the School Bus was insured by Progressive, and not covered under the Policy, relevant to the question of whether there existed basis for Sparta's purported repudiations of coverage.  Sparta, furthermore, has reason to pursue discovery against National Continental and Progressive to determine whether it (and not Sparta) provided insurance to the School Bus.[36]  The Court further

---

[35] Macklin also contends that Tri-State is out of business.  Whether true or not, that fact does not change the Court's analysis of the subpoena to Tri-State.

[36] Macklin argues that insurers who repudiate liability and deny coverage with no basis are bound to stand by the alleged facts that supported its determination.  *See* Doc. 83 at 8 (citing *State Farm Ins. Co. v. Domotor*, 266 A.D.2d 219, 220–21 (2d Dep't. 1999)).  According to Macklin, Sparta "repudiated liability in 2014 and 2015, and again in 2019[;]" accordingly, Sparta "is bound to stand by the merits of its repudiation of liability and denials of coverage based upon what little information [it] sought while racing to deny coverage." *Id.* at 7–8.  Put differently, Macklin reasons that "if Sparta thought that such things as the complete workers' compensation file were irrelevant when it denied coverage, it should not be heard now to complain of an alleged need for the same." *Id.* at 8.  Having found that it has yet to be determined whether Gallagher had the authority to repudiate coverage, whether Gallagher, indeed, repudiated coverage, and whether Sparta ever received timely notice of either the underlying claim or the Underlying Action, the Court cannot conclude that Macklin is bound "to stand by the merits of its repudiation," as Macklin contends. *Domotor*, 266 A.D.2d at 220–21.

finds that FRCP 26 affords Sparta the right to procure information from these entities, even if some of such information is duplicative of that already produced by Macklin.

In light of these findings—as well as the Court's earlier discussion regarding Macklin's motion to strike denials and affirmative defenses—the Court hereby directs the parties to meet and confer to narrow the contours of the subpoenas.  If the parties cannot agree, the parties are directed to notify the Court within thirty days of this order.

Lastly, the Court, per Sparta's request, directs Macklin to withdraw Exhibit 28 to the Soverow Declaration and to resubmit the document with confidential information redacted (e.g., addresses, telephone numbers, and email addresses).  *See* Doc. 109 ¶ 27.

## III.    CONCLUSION

For the reasons set forth above, Macklin's motion to strike and motion to quash are DENIED.  The Court directs parties to meet and confer concerning the scope of the subpoenas and to advise the Court if they have not reached an agreement within thirty days of this order. The Clerk of Court is respectfully directed to terminate these motions, Doc. 79 and Doc. 82.


It is SO ORDERED.


Dated:    September 30, 2022
          New York, New York

                                        _____
                                            Edgardo Ramos, U.S.D.J.